UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Paul Maertens,

       Plaintiff,

v.                                                                    Civil Case No. 2:19-cv-12236

JAC Products Inc.,                                      Sean F. Cox
                                                                       United States District Court Judge

       Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Maertens sued his employer JAC Products for violating the Americans with Disabilities Act and the Michigan Persons with Disabilities Act. JAC now moves for summary judgment arguing that JAC did not discriminate against Maertens based  disability. For the reasons below, the Court GRANTS in part and DENIES in part JAC's motion for summary judgment.

## BACKGROUND

Plaintiff Paul Maertens ("Maertens") is a former employee of Defendant JAC Products ("JAC"). Maertens alleges that JAC violated the Americans with Disabilities Act of 1990 by denying him a reasonable accommodation for his disability and by terminating him due to his disability. (Compl. at 4-6). Maertens also alleges that JAC violated the Michigan Persons with Disabilities Act for the same conduct. (Compl. at 6-8). Maertens seeks damages, costs, interest, and attorney fees. (Compl. at 9). Discovery closed on April 30, 2020. (ECF No. 12). Now, JAC moves for summary judgment arguing that they did not discriminate against Maertens based on his disability. (ECF No.

1

22).

With respect to summary judgment motions, this Court's practice guidelines, included in the

Scheduling Order and provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

> b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

> c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 3).

The parties complied with the Court's practice guidelines for summary judgment motions

such that Defendants' motion includes a "Statement of Material Facts Not In Dispute" ("Def's.

"Stmt.") and Plaintiff's response brief includes a "Counter-Statement of Disputed Facts" ("Pl.' s

Stmt.").

The following relevant material facts are gleaned from the evidence submitted by the

parties, *viewed in the light most favorable to Plaintiff*, the non-moving party.

Maertens started working at JAC on June 26, 2017. (Def's Stmt. at 1). Maertens suffered

a mini-stroke during the course of his employment, which affected his eyesight. (Def's Stmt. at

3).  His doctor told Maertens that he was not able to drive for three weeks, and in her note to

JAC, she wrote, "Please allow Mr. Maertens to work from home pending further evaluation."

(Def's Stmt. at 3). Based on this note, Maertens requested an accommodation to work from home for this three week period. (Def's Stmt. at 3).

After his visit to the doctor, Maertens emailed Eric Weber informing him of the driving restriction and that his doctor said he could work from home. (Pl's Stmt. Ex. E). Weber replied that he was sorry to hear about Maertens' condition and "If we were able to get transportation arranged for you into work, would the doctor allow you to come into the office to work if need be?" (Pl's Stmt. Ex. E). The next email in the exhibit is later in the day from Hall asking for an update on transportation options, and Maertens responded with a schedule for the following two weeks. (Pl's Stmt. Ex. E). Maertens and Hall also had a phone call during which Hall told Maertens to "Find a way to get your butt in here! Your launch team needs you. I want a plan by 1:00 p.m. today on how you're going to get in here. This is unacceptable!" (Compl. at 3; Maerten's Dep, Attached to Def's Br. as Ex. 2 at 23). There is no evidence of any other emails from HR regarding alternative accommodations. The only other communication from HR about the situation on the record was when HR Generalist Clorissa Boehm told Maertens that it was a good thing that he didn't push the issue of working from home because it would have been a problem. (Pl's Stmt. at 4). Maertens made other arrangements to get rides to work during that three week period. (Def's Stmt. at 24).

After this incident, Maertens testified that he was not acknowledged as much as he was prior to his mini-stroke. (Maerten's Dep. at 17). As an example, Maertens testified that Hall used to say "good morning" to him, but stopped, and upper management communicated with him 50% less than before regarding the cargo box project. (Maerten's Dep. at 17). However, Maertens testified that no one at JAC ever said anything derogatory about his disability. (Maertens Dep. at

3

19).

Maertens states that he was capable of completing the tasks he had been doing from his house. (Pl's Stmt. at 5). At his deposition, Maerten's supervisor, Mark Arfert testified that it could be reasonable for an employee to work from home for one day if, for instance, a child was sick. (Arfert Dep. Attached to Def's Br. as Ex. 7 at 22). However, he also testified that three weeks would be unreasonable, saying "our work does not work from home. We have to interact with the people here on site as well as our plant locations . . . ." (Arfert Dep. at 22).

Maertens' supervisors, Alex Hall and Mark Arfert, testified that Maertens was terminated due to performance issues, including "issues with tasks being completed." (Arfert Dep. at 17). Maertens denies all of this and testified that "I did an excellent job. I was never told differently." (Maertens' Dep. at 190-192). Maertens received a bonus and a letter of commendation in March 2018 and a raise that year for good performance. (Maertens Dep. at 71-72, Ex. G). Arfert testified that the discussions he had with Maertens was similar to those he had with other employees and that he would not recommend a bonus for an employee he supervised who had significant performance issues. (Arfert Dep. at 12-13).

In January of 2019, JAC underwent a restructuring as a result of financial losses. (Def's Stmt. at 8). In Maertens' division, fourteen employees were let go, including Maertens. (Def's Stmt. at 8). The ages of the other terminated employees ranged from 28 to 63, and Maertens was informed of the demographic information of the other terminated employees. (Termination Demographics, Attached to Def's Br. as Ex. 10; Def's Stmt. at 8). Maertens' position was not filled following his termination. (Def's Stmt. at 8). Following his termination, Mark Arfert told Maertens that he "lacked energy." (Maertens Dep. at 20). Maertens also testified that the reason

4

he was given for his termination was that the company was losing millions of dollars. (Maertens Dep. at 42).  Maertens testified that he has no basis to question JAC's business reason for restructuring. (Maertens Dep. at 42).

JAC has Anti-Discrimination and Harassment policies that Maertens received and reviewed at the beginning of his employment. (Def's Stmt. at 6). These policies contain reporting procedures, but Maertens did not report any discrimination or harassment to JAC, nor did he utilize the comment box. (Def's Stmt. at 6).

## STANDARDS OF REVIEW

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## ANALYSIS

Maertens alleges that JAC discriminated against him based on his disability violating the Americans with Disabilities Act ("ADA") and the Michigan Persons with Disabilities Civil Rights

5

Act ("PWDCRA").[1] Maerten's claim is three-fold. First, he claims that JAC failed to make a reasonable accommodation for his disability. (Compl. at 5). Second, he claims that JAC created a hostile work environment following his request for this accommodation. (Compl. at 5). Third, he claims that JAC terminated him based, in part, on his disability. (Compl. at 5). JAC denies all three claims.

The ADA prohibits discrimination against "a qualified individual with a disability" as it applies to hiring and firing. 42 U.S.C. §1211(a). Prohibited discrimination also includes "not making reasonable accommodations." 42 U.S.C. §12112(b)(5)(A); *Kleiber v. Honda of America Mfg., Inc.*, 485 F. 3d 862, 868 (6th Cir. 2007). "To recover on a claim for discrimination under the ADA, a plaintiff must show that he or she (1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). "There are two ways that a litigant can prove discrimination–directly or indirectly–each with its own test." *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

## A. Reasonable Accommodation Claims

Maertens argues JAC discriminated against him by failing to accommodate his disability by refusing to allow him to work from home during the three weeks he was restricted from driving. (Compl. at 5). "Claims that allege a failure to accommodate necessarily involve direct evidence." *Hostettler*, 895 F.3d at 853. Under the direct method of proof the plaintiff must show (1) that he is

---

[1] Both parties stipulate that PWDCRA substantially mirrors the ADA and that Maertens' ADA and PWDCRA claims can be addressed simultaneously. (Def's Br. at 1; Pl's Br. at 2) *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002) ("Michigan's Persons with Disabilities Civil Rights Act substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim.").

an individual with a disability, and (2) that he is otherwise qualified for her job despite the disability "(a) without reasonable accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (3) with a proposed reasonable accommodation." *Id*. (quoting *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016)). As to the first requirement, both parties agree that Maertens had a disability due to the effects of his stroke. (Pl's Br. at 3; Def's Br. at 2).

**Otherwise Qualified**

To show that he is otherwise qualified for his position, Maertens must show that he could perform the essential functions of the job with or without an accommodation. *Id*. "A job function is essential if its removal would fundamentally alter the position." *Id*. (quoting *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018). "The essential functions are the core job duties, not the marginal ones." *Id*. (citing 29 C.F.R. § 1630.2 (n)(1)).

This determination is highly fact specific. *Mosby-Meachem*, 883 F.3d at 605. Courts may consider the amount of time spent on a particular function; the employer's judgment; "written descriptions prepared before advertising or interviewing" for the position; the consequences of not requiring the employee to perform the particular function; and other factors. 29 C.F.R. § 1630.2(n)(3). The employer's judgment receives some weight in the analysis, but it is not absolutely determinative, especially when an employee puts forth competing evidence. *Hostettler v. College of Wooster*, 895 F.3d at 853.

Here, both parties presented evidence. Maertens testified that he "could have done my job what I was doing from home." (Maertens Dep. at 17). He specifically testified that he could have performed his job remotely during the relevant three weeks:

Q.    In your opinion, in that April time frame after you went to the doctor, could

you have  performed your duties from home?

A.     Yes.

(Maertens Dep. at 50). Maerten's supervisor, Mark Arfert testified that it could be reasonable for

an employee to work from home for one day if, for instance, a child was sick. (Arfert Dep. Attached

to Def's Br. as Ex. 7 at 22). However, he also testified that three weeks would be unreasonable,

saying "our work does not work from home. We have to interact with the people here on site as well

as our plant locations . . . ." (Arfert Dep. at 22). JAC also presented evidence of Maertens' job

position description, which states that the position includes "foster[ing] a team-oriented working

environment" as one of twelve skills neccessary for the job. (Position Description, Attached to Def's

Br. as Ex. 3). The position description does not include any requirement that the employee work in-

person, on-site at JAC. (Position Description). Given the competing testamentary evidence and the

unclear nature of the job description, summary judgment is improper on this issue.

**Failure To Engage In Interactive Process**

"Once an employee requests an accommodation, the employer has a duty to engage in an

interactive process. Specifically, the employer must 'identify the precise limitations resulting from

the disability and potential reasonable accommodations that could overcome those limitations.'"

*Hostettler v. College of Wooster*, 895 F.3d at 857 (quoting *Mosby-Maechem*, 883 F.3d at 605-06).

The interactive process must be in good faith, and the employer must engage in an "individualized

inquiry" to determine whether a reasonable accommodation can be made. *Id*.

In their brief, JAC argues that they engaged in the interactive process and provided a

different reasonable accommodation (Def's Br. at 3), but the evidence does not support their claim.

The only evidence they provide of an interactive process is the email from Eric Weber asking

8

Maertens, "If we were able to get transportation arranged for you into work, would the doctor allow you to come into the office to work if need be?" (Pl's Stmt. Ex. E). The next email in the exhibit is later in the day from Hall asking for an update on transportation options, and Maertens responded with a schedule for the following two weeks. (Pl's Stmt. Ex. E). There is no evidence of any other emails from HR regarding any alternative accommodations. Maertens and Hall also had a phone call during which Hall told Maertens to "Find a way to get your butt in here! Your launch team needs you. I want a plan by 1:00 p.m. today on how you're going to get in here. This is unacceptable!" (Compl. at 3; Maertens Dep. at 23). Additionally, Maertens testified that an HR Generalist, Clorissa Boehm, told him that it was a good thing that he didn't push the issue of working from home because it would have been a problem. (Maertens Dep. at 18). This is not sufficient evidence to show that JAC engaged in a good faith interactive process with Maertens to accommodate his disability.

JAC asserts they provided a different reasonable accommodation in lieu of allowing Maertens to remotely. (Def's Br. at 3-4). JAC argues that the proposed alternative accommodation was for "Maertens [to] obtain rides or use other means of transportation to get to work." (Def's Br. at 3). However, that cannot be considered an accommodation under the ADA. The ADA defines reasonable accommodation as "(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. §12111(9). While the definition does not specifically address transportation,

all of the example accommodations within it require some action by the employer. Merely telling Maertens to find another way to get to work is not an accommodating action by JAC.

Therefore, the Court DENIES JAC's motion for summary judgment as to the reasonable accommodation claims in Count I and Count II of the Complaint.

**B. Hostile Work Environment Claims**

To establish a hostile work environment action under the ADA, Maertens must show that (1) he was disabled; (2) he was subject to unwelcome harassment based on his disability; (3) the harassment unreasonably interfered with his work performance and created a hostile work environment; and (4) JAC knew or should have known about the harassment and failed to take corrective measures. *Trepka v. Bd. of Educ.*, 28 Fed. Appx 455, 461 (6th Cir. 2002); *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir. 1997). In order to establish a hostile work environment, a workplace must have been "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). The Court must look to the totality of the circumstances when determining "whether – taken together – the reported incidents make out such a case." *Williams v. Gen Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999).

As to the first element, the parties agree that Maertens was disabled. (Pl's Br. at 3; Def's Br. at 2). With regard to the second element, Maertens provides the following evidence: Maertens testified that his supervisor, Hall, demanded he figure out another way to get to work after Maertens requested to work from home (Compl. at 3; Maertens Dep. at 23) and that after that incident, Hall no longer exchanged the workplace pleasantries he once did with Maertens, such as saying "good

10

morning." (Maerten's Dep. at 17).  Meartens testified that he communicated 50 percent less with upper management after requesting accommodation.  (Maertens Dep. at 17).  Maertens also testified that JAC's HR Representative told him it was a good thing that he didn't push the issue of working from home because "it would have been a problem." (Maertens Dep. at 18).

Maertens argues that these incidences taken together are enough to establish a hostile working environment. JAC persuasively argues that this does not rise to the level of a hostile work environment due to the limited number of the alleged comments and lack of physical threats or humiliation. A lack of small talk and less communication without more cannot be described as "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21.

Maertens has not presented any evidence  to demonstrate the third element that these incidents unreasonably interfered with his work.

Maertens has failed to establish the fourth element that JAC knew or should of known about the harassment and failed to take corrective measures. When an employer "implements a remedy, it can be liable for discrimination . . . only if that remedy exhibits such indifference as to indifference as to indicate an attitude of permissiveness that amounts to discrimination." *Blankenship v. Parke Care Centers*, 123 F.3d 868, 873 (6th Cir. 1997). Here, JAC implemented an internal remedy for any potential discrimination or harassment with policies prohibiting such behavior and reporting mechanisms to allow JAC to investigate the allegations. Despite being aware of these policies and procedures, Maertens did not report any incidences to anyone at JAC.  Maertens argues that because Hall and HR are "high officials for Defendant" and they were the ones that acted, JAC had notice of the hostile work environment. However, this argument is unpersuasive because Maertens did not take utilize the reporting procedures that were put in place to address his concerns.

JAC has established that there is no issue of genuine material fact as to the hostile work environment claim. Therefore, the Court GRANTS JAC's motion for summary judgment as to the hostile work environment part of Count I and Count II of the Complaint.

## C. Termination Claims

The ADA prohibits discrimination by a covered entity "against a qualified individual with a disability because of the disability of such individual in regard to application procedures, the hiring, advancement, or discharge of employees, employee compensation job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). This claim is analyzed under the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792; *see also Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016). To establish a prima facie case, Maertens must demonstrate that (1) he was disabled; (2) he was otherwise qualified to perform the job, with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) JAC knew of the disability; and (5) he was replaced or his former position remained open while the employer sought other applicants. *Ferrari*, 826 F.3d at 891-92. In cases where the plaintiff is terminated as a result of workplace reorganization or a reduction in force, the fifth element is altered so that the plaintiff must introduce evidence "tending to indicate that the employer singled out the Plaintiff for discharge for impermissible reasons." *Arthur v. American Showa, Inc.*, 625 Fed App'x 704, 707 (6th Cir. 2015). Maertens may meet this burden by demonstrating that a similarly-situated individual outside of the protected class was treated more favorably. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).

The first element is met as there is no dispute as to Maertens' disability. The third and fourth elements are also met because there is no dispute that Maertens was terminated and JAC knew of

his disability. The parties disagree as to the second and fifth elements.

**Otherwise Qualified**

An "otherwise qualified" individual under the ADA is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position such individual holds or desires." 42 U.S.C. §12111(8). Similarly, " . . . like the ADA, the PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job." *Peden v. City of Detroit*, 470 Mich. 195, 204 (2004).

Both parties present facts as to Maertens's qualification for the job. JAC highlights a portion of Maertens deposition that establishes a history of Maertens failing to respond promptly to emails. (Maertens Dep. At 128-144.) Maertens also was responsible for missed target dates on two projects. (P-D-C-A Plans, Attached as Ex. 9 to Def's Br.; Maertens Dep. at 125-126).

Maertens testified that he "did an excellent job. [He] was never told differently." (Maertens Dep. at 16). He never received any warnings, reprimands, or negative feedback for his performance. (Maertens Dep. at 50). In fact, Maertens recieved a $3,339 bonus and a letter of commendation in March 2018 and a raise that year for his good performance. (Maertens Dep. at 20; March 2018 Paystub, Attached as Ex. G to Pl's Br.). Maertens' supervisor, Mark Arfert testified that an employee with significant performance issues would not have been given a raise. (Arfert Dep. at 6). Arfert also testified that there was no need to issue any reprimands or disciplinary action against Maertens. (Arfert Dep. at 5). Arfert testified that he had "more kind of a working discussion in regards for tasks and how we can accomplish them or him to complete them" with Maertens. (Arfert

Dep. at 5).

In light of this evidence most favorable to Maertens, a reasonable juror could certainly find that he was qualified for his position.

**Singled Out for Impermissible Reasons**

Maertens alleges that he was singled out for termination based on his disability. (Pl's Br. at 14-15). He points to the evidence that his manager stopped exchanging pleasantries with him after he asked for an accommodation and that he communicated with upper management less. (Maertens Dep. at 17). Maertens also highlights the comment from the HR manager that she was glad that he did not push the issue of working from home because it could have been a problem. (Maertens Dep. at 18).

JAC emphasizes that his termination occurred more than six months after Maertens' need for accommodation. (Def's Stmt. at 5). JAC argues, "Maertens  had resumed driving and was working as normal for months before the termination decision was made, negating any idea that Maertens was singled out based on a disability." (Def's Br. at 10-11). JAC also argues that Maertens cannot establish this element because he has come forth with no evidence of similarly situated non-disabled individuals who were not terminated. *Ercegovich*, 154 F. 3d at 355. Maertens does not address this argument in its brief.

Given the competing evidence, summary judgement is not proper on this issue.

**Legitimate, Non-discriminatory Reason For The Termination**

Under the *McDonnell Douglas* burden-shifting framework, once a plaintiff has satisfied his prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the termination. *Ferrari*, 826 F.3d at 892. To survive a motion for

summary judgment, Maertens need not definitively prove that JAC's reason is pretextual, but rather "must prove only enough to create a genuine issue as to whether the rational is pretextual." *Id*. at 895. In order to do so, Maertens must show that "(1) the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id*.

JAC has presented a legitimate, non-discriminatory reason for the termination: JAC lost millions of dollars and needed to restructure its business to account for those losses. (Def's Stmt. at 5). Fourteen employees were terminated. (Termination Demographics). Maertens' position was not filled following his termination. (Def's Stmt. at 8). Maerten's supervisor, Mark Arfert testified as to the circumstances of the restructuring:

A.   We had, JAC Products had financial, well, we didn't meet our financial targets in 2018 which had a bigger impact to the company's configuration for the year which was 2019 and the decision was made to reduce the workforce. We had, we had Paul, numerous other personnel out of the Pontiac facility were terminated on the same day. And all of that was based on the financial status and the reasons of the senior management in regards to which candidates should be looked at for the termination.

Q.   Okay. Were you told that you need to select someone to terminate from your group or how did that go?

A.   Well, we would be getting the task in regards to percentage or meaning headcount, reduction in the overall potential engineering when we would look through the, with my peers, in regards to the, let's say, lower performing

engineers and select based on the performance, the time frame of years and

to look at the person based on their performance.

(Arfert Dep. at 6-7). He went on later in the deposition to specifically confirm that Maertens was selected for termination based on his non-performance. (Arfert Dep. at 9).

To rebut this, Maertens simply states in his brief, "this is clearly pretextual as plaintiff didn't have any performance issues for the duration of his employment with Defendant." (Pl's Br. at 15). However, in order to show that JAC's offered legitimate business reason is mere pretext for disability discrimination Maertens must offer evidence that JAC's proffered reason (1) has no basis in fact, (2) did not actually motivate the decision, or (3) is insufficient to motivate JAC's action. *Ferrari*, 826 F.3d at 895. Here, Maertens testified that the reason he was given for his termination was that the company was losing millions of dollars. (Maertens Dep. at 21). His supervisor testified that the company did not meet their financial targets. (Arfert Dep. at 6-7). Maertens is correct that there was no formal disciplinary action taken against him prior to termination. However, he has failed to show that poor performance that may not have given rise to disciplinary action when the company was financially stable was not the reason he was selected for termination when the company was restructuring and terminating fourteen employees.

Maertens has not established that a genuine issue as to whether JAC's proffered legitimate business reason was pretextual, and therefore, JAC has established that no reasonable person could find that JAC terminated him because of his disability. Therefore, the Court GRANTS JAC's motion for summary judgment as to the disability discrimination termination claims in Count I and Count II of the Complaint.

**CONCLUSION**

16

For the reasons above, the Court DENIES JAC's motion for summary judgment regarding the reasonable accommodation claims and GRANTS JAC's motion for summary judgment regarding the hostile work environment and termination claims and dismisses those claims in Counts I and II with prejudice. Count III was withdrawn by Plaintiff's counsel on the record at the motion hearing on November 13, 2020. Therefore, the only remaining viable claims are the reasonable accommodation claims under Counts I and II.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: January 14, 2021